JAMES N. LAWRENCE and wife

v.

EPHRAIM P. EMSON.

The power " to settle " on an assignment of a complainant's interest in a contract,—*Held*, not to authorize the assignee to include it in a general arbitration of all the matters in difference between him and the other party to the contract.—*Held*, also, that an award thereon obtained against the protest of the complainant, and by the assignee's deception, constitutes no bar to a specific performance of such contract.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. S. A. Allen* and *Mr. F. Kingman*, for complainants.

*Mr. W. H. Vredenburgh*, for defendant.

THE CHANCELLOR.

On the 6th of October, 1868, Ephraim P. Emson executed an agreement with James N. Lawrence and Annie, his wife, by which it was recited that they had that day sold and conveyed to him all their right, title and interest in certain

tracts of cedar swamp described in the deed from them to him, and he thereby, in consideration thereof, agreed with them that, in addition to the sum of $500 by him paid to them on the delivery of the deed, he would prosecute to a final conclusion the suit in this court in which Mr. Lawrence was complainant and Phebe Ann Lawrence and others were defendants, at his own cost and pay all expenses, and would bring it to a close as soon as practicable, and that he would, at the termination of the suit, well and sufficiently convey to them or the survivor of them, or to their heirs or assigns, one-half of all the lands which might be recovered in the suit or by compromise or settlement thereof, or of the proceeds thereof in case a sale should be ordered by the court or agreed upon between the parties; and, in addition thereto, would also pay to Mr. Lawrence, his heirs or assigns, $500 in cash at the end of the suit. The suit resulted successfully for the complainant therein. Mr. Emson did not comply with the agreement, and, on the 27th of May, 1872, Lawrence and his wife filed their bill in this court against him for specific performance thereof. Emson filed his answer thereto on the 14th of August following, and they filed their replication on the 25th of September.

On the 27th of December, 1872, Lawrence and his wife, by their assignment of that date, assigned to William Warwick, for valuable consideration, as it was stated in the instrument, the agreement and all moneys due and to grow due thereon, and all their right, title and interest to the lands and premises mentioned therein, and all benefit of all proceedings to be had thereon. And they thereby authorized and empowered him to do all and every act and thing necessary and proper for the recovery of the lands and for the recovery of moneys due and for settlement with Emson.

On the 18th day of July, 1874, they filed an amended bill to restrain proceedings in partition at law which were in progress for the partition, between Emson and his grantees, of part of the property, and to restrain Emson from cutting down timber on any part of the property. More than a

year before the filing of the amended bill, and in the month of May, 1873, Warwick and Emson entered into an arbitration of all matters in difference between them, and, on the 16th of that month, the arbitrators awarded that Emson should pay to Warwick $942.33, on or before August 16th, 1873, in full discharge of all demands by either of them against the other.

On the 7th of June, 1873, Emson paid that money to Warwick, who thereupon, in consideration thereof, acknowledged satisfaction of the agreement which Lawrence and his wife had assigned to him and of all rights that had accrued or might accrue to him thereon, and surrendered the agreement to Emson. By the answer (filed September 28th, 1874) to the amended bill, Emson alleged that, since the filing of the original bill, the whole subject matter of that bill and of the amended bill had been compromised, adjusted and fully settled, between the parties to the bills, by an award of arbitrators, and that, before the filing of the amended bill, he paid to Lawrence and his wife $942.33 (the sum awarded to be paid by him to Warwick) in full satisfaction and discharge of the agreement and of all claims on which the suit was founded, and that, in consideration thereof, the agreement was released by release under seal and fully satisfied and discharged and duly surrendered by them to him, and that it was then duly cancelled by him. The defendant, in support of this defence of arbitrament and award, relies on the arbitration between him and Warwick and the award thereunder. The complainants insist that Warwick had no right to submit the claim assigned to him to arbitration, without their consent, and that Emson and the arbitrators were notified of the fact; and they insist, further, that the arbitration was unfairly conducted; that the arbitrators adjourned it, at Emson's request, for a week, and that thereupon Mrs. Lawrence and her counsel, who were her son James and Joel M. Van Arsdalen, who attended the arbitration, went away accordingly, expecting to return at the day to which the adjournment was made, and that she

and they did not return, because, and only because, Warwick, within the week, informed James Lawrence, by letter, that the arbitration was ended. The complainants say that the assignment to Warwick was made to him merely as security for money due him from James N. Lawrence, and that, when it was made, he executed and delivered to the complainants an instrument of writing in which he agreed to pay over to them all that he should recover in case of settlement or compromise, over and above the amount so due him; and, also, that he would not settle or attempt to settle with Emson without the full consent and approbation of Mrs. Lawrence first had and obtained. James Lawrence and Mr. Van Arsdalen both say that that agreement on the part of Warwick was read to the arbitrators as notice that Warwick had no right to submit the claim to arbitration.

If Emson had notice that Warwick was not the absolute owner of that claim and had no right to submit it to arbitration without first obtaining the consent of Mrs. Lawrence, the arbitrament and award will constitute no bar to this suit. James Lawrence and Van Arsdalen and Mrs. Lawrence all swear that the agreement made by Warwick was to the effect that he would pay over to the complainants all that he might receive on the claim, over and above his demand, and that he would not settle with Emson without Mrs. Lawrence's full and free consent. Both James Lawrence and Van Arsdalen swear that the agreement on the part of Warwick was read before the arbitrators. On the other hand, Emson and Warwick and the two of the arbitrators who testified (the other is dead), all deny it. Mrs. Lawrence says, indeed, that the agreement (which is lost) was in her possession at New Egypt, where the arbitration took place, and that she neither handed, gave nor showed it to any one, and does not know that she took it out from among her papers, but she also swears, as do James and Van Arsdalen, that she told the arbitrators that Warwick had no right to submit the claim to arbitration without her consent.

Lawrence *v.* Emson.

The testimony of Mr. Emson on this subject is note-worthy. On his cross-examination he says he does not recollect that Mrs. Lawrence stated to him that Warwick had no right to arbitrate the matter; that he does not recollect that she objected to the arbitration going on. It will be seen that his denial is qualified; and here it may be remarked that it appears, by the testimony of the arbitrators, that there was a dispute between Mrs. Lawrence and Mr. Emson in regard to a claim against her husband, which Mr. Emson proposed to offset against the claim against him. Now, unless she had an interest in the claim which it was proposed to arbitrate, it is difficult to account for her intervention and the manifest recognition on the part of Emson and Warwick of her right to be heard. The fact that three years and a half elapsed between the time of the arbitration and the time when the witnesses, James Lawrence, Mrs. Lawrence and Van Arsdalen, were sworn, is enough of itself to account for the discrepancy in their testimony in reference to the reading of the agreement to the arbitrators. It is true, Mr. Richey, the lawyer who drew the agreement signed by Warwick (he does not speak positively), says he does not remember that the instrument contained any provision against settlement without Mrs. Lawrence's consent. It is not surprising that, after the lapse of six years, he should have no particular recollection in regard to a paper drawn merely in the course of his daily business. He says, however, that he thinks that an arbitration was spoken of at the time, but whether it was mentioned in the paper or not, he does not recollect. It was urged on the part of the defendant, on the hearing, that the power to settle involved the power to submit to arbitration, but if Emson understood that Warwick was not acting wholly for himself, but was executing a power, even though coupled with an interest, he was bound to take notice of the limitations of the power. Warwick's power to settle did not, especially under the circumstances, authorize him to submit to arbitration. *Story on Agency § 99; Morse on Arbitration 11; 2 Parsons on Con-*

*tracts 200.* Had the complainants taken part in the arbitration without protest, they would have been bound by the result. But they did not do so, and there is strong reason for believing that they were designedly prevented from being present after Mrs. Lawrence made objection. She and her counsel all swear that the arbitrators adjourned for a week, on the application of, and to accommodate, Mr. Emson, and they left the place with that understanding.

Mr. Hurley, one of the arbitrators, on cross-examination says that he does not think that the arbitrators adjourned, though there was some talk about it. But, on the other hand, on the 24th of April, 1874, in an affidavit made by him in this suit, to be used on behalf of Emson on the argument of an order to show cause why the bill should not be dismissed for want of prosecution, he swore that "the arbitration was adjourned in the morning to some other day."

Mr. Meirs, the other arbitrator who was sworn, says he does not recollect that any adjournment took place; and Mr. Emson and Warwick say that there was no adjournment. But on this point the letter written by Warwick to James Lawrence is most important testimony. It is dated May 21st, 1873, five days after the day on which the arbitrators met. In it Warwick says that the arbitration ended without a settlement, and he offers to assign the claim to James Lawrence, or any responsible person whom the latter will name, if the latter will pay his demand, with something additional for his trouble, or give him satisfactory security for its payment at an early day. He says he can give him some valuable information, and says, also, that the claim is in better shape than ever, and adds that as they (James Lawrence and Van Arsdalen) are lawyers, they can make the case out, and they will make "something nice out of it, as they ought." He is urgent to have the matter attended to at once, if they conclude to take the assignment. It is said, by way of explanation of this extraordinary statement, that the arbitration was ended without a settlement,

when, in fact, there had been an award 'in his favor five days before the date of the letter, and on the very day on which the arbitrators met; that Warwick had not then been able to get the money awarded, and, in fact, did not get it until the June following; but this is no explanation, because, by the terms of the award, the money was not payable until August following. He, in fact, not only got the money before it was payable by the award, but got it very soon (seventeen days) after he wrote that letter. The manifest object of the letter was to deceive Mrs. Lawrence as to the arbitration, and to lead her to believe that it had been entirely abandoned. Its initial statement was not true in any sense.

The arbitration itself was conducted almost entirely after Mrs. Lawrence and her counsel had gone away. Neither of the arbitrators can say why she and her counsel left before the arbitration was concluded. Neither can Emson nor Warwick. But that they did go is undeniable. The arbitrators swore no witnesses, but appear to have accepted an account against James N. Lawrence which was disputed by Mrs. Lawrence before the arbitrators, according to the testimony of the arbitrators, without even Emson's oath. The claim assigned to him by the Lawrences was all the demand that Warwick had against Emson.

Under the circumstances, the arbitration and award cannot be accepted as a bar to the complainants' claim. For the money paid to Warwick, Emson will have credit. James N. Lawrence, it may be stated, was, when the arbitration took place, out of the state, and he has ever since remained away. Emson has never sought or been willing to come to any account except in the arbitration with Warwick. He has always denied his liability under the agreement made by him with Lawrence. In his answer to the original bill, he denied that, on the day of the date of that agreement, or at any time, he entered into it or signed any such agreement, and, by his answer to the supplemental bill, he makes a similar denial. When examined as a witness in

this suit, he refused to acknowledge that the signature to the agreement was his, but would only say that it "looked like" his.

The agreement is fully proved and the arbitration and award are no bar to the relief sought in this suit. There will, therefore, be a decree establishing it and for specific performance of it by equal partition between the complainants and Emson, according to the agreement, of all the lands therein mentioned and conveyed by the complainants to him and remaining unsold when this suit was begun, and he will be required to account to them for one-half of the value of the land sold by him before the commencement of this suit, and for all other moneys due to them under the agreement. As before stated, he will have credit for the amount paid to Warwick.